Evelyn COLLIER

v.

Paul LOCICERO, Neil O'Donoghue, R. Donahue, R. Osso, Lieutenant Haurilak, and Officer Petrocelli,

Case No. 3:91–CV–763 (JAC).

United States District Court,
D. Connecticut.

May 4, 1993.

David Bachman, Williams & Wise, New Haven, CT, for plaintiff.

Michael J. Gustafson, Halloran & Sage, Hartford, CT, Elliot B. Spector, Sack, Spector & Barrett, West Hartford, CT, Kevin P. Walsh, Cella, McKeon, & Williams, North Haven, CT, for defendants.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### JOSÉ A. CABRANES, Chief Judge:

This action arises out of a search conducted by the defendants at the plaintiff's apartment on June 28, 1990. The plaintiff has alleged that the search was unconstitutional because (1) the defendants forcibly entered the plaintiff's apartment before properly announcing that they were police officers and (2) one of the defendants conducted, without intervention by the others, an excessively intrusive search of the plaintiff's body. The plaintiff now seeks damages under 42 U.S.C. § 1983. Pending before the court are motions for summary judgment on behalf of all six defendants.[1] The plaintiff filed a single response to these motions on November 9, 1992.[2] The court heard oral argument on February 22, 1993.[3]

The claims against defendant Petrocelli were dismissed with prejudice, with the plaintiff's consent, on November 24, 1992. Consequently, the pending motions for summary judgment apply only to defendants Donahue, O'Donoghue, Osso, Haurilak, and Locicero.

## UNDISPUTED FACTS

At the hearing on February 22, 1993, the parties agreed that no genuine dispute exists as to the following facts:

---

**1.** *See* Memorandum of Law in Support of Defendant Robert Donahue's Motion for Summary Judgment (filed October 13, 1992) ("Donahue Memorandum"); Defendant Robert Donahue's Reply to Plaintiff's Objection to Motion for Summary Judgment (filed November 18, 1992); Memorandum of Law in Support of Defendants O'Donoghue, Osso and Haurilak's Motion for Summary Judgment (filed October 15, 1992) ("O'Donoghue/Osso/Haurilak Memorandum"); Memorandum of Law in Support of Officer John Petrocelli and Officer Paul Locicero's Motion for Summary Judgment (filed October 19, 1992) ("Petrocelli/Locicero Memorandum").

**2.** *See* Plaintiff's Memorandum in Opposition to Motions for Summary Judgment (filed November 9, 1992) ("Plaintiff's Memorandum").

**3.** *See* Transcript of Hearing of February 22, 1993 (filed May 4, 1993) ("Hearing Transcript").

The plaintiff in this matter is Evelyn Collier, a 32-year-old woman who was employed as a state corrections officer prior to the arrest that gave rise to this action. At the time of the events in question, Collier rented an apartment at 9 Third Street, Ansonia, Connecticut, in which she lived with one of her daughters. The plaintiff's boyfriend, Harold Beall, also lived at the plaintiff's apartment from time to time. The defendants are five male police officers, all of whom were members of the Valley Street Crime Unit ("VCSU"), a task force consisting of members of the police departments of Shelton, Ansonia, Derby, and Seymour, Connecticut. During the month of May 1990, the members of the VCSU obtained information from confidential informants that cocaine was being sold at Collier's apartment by Beall. Based on this information, Officers Locicero and O'Donoghue applied for and obtained a search warrant for the plaintiff's apartment. The warrant, which was issued by the Connecticut Superior Court on June 20, 1990, authorized the officers to search for cocaine, marijuana, handguns, and other items.

In the evening on June 28, 1990, the officers approached the plaintiff's apartment to execute the search warrant. The officers observed Beall enter the plaintiff's apartment shortly before 11:00 p.m. A few minutes later, four of the officers—Donahue, Osso, O'Donoghue, and Petrocelli—approached the front door of the apartment while the other two officers—Haurilak and Locicero—approached the rear door. At this time, Collier was lying on the couch in the living room a few feet from the front door; Beall was standing in the kitchen. One officer announced the officers' presence by knocking on the front door. Someone from within the apartment responded to the knock by asking "Who is it?"—or by using words to that effect—in a voice loud enough to be heard by those outside the apartment. At this time, the plaintiff was reclining on a sofa in the living room near the front door of the apartment; her boyfriend was walking from the kitchen into the living room.[4] After 25-30 seconds had passed and no one had opened the front door, the four officers at the front door forcibly entered the apartment.[5] Upon hearing those officers enter, the two officers at the rear door also entered the apartment.

After coming into the apartment, the officers immediately observed Collier and Beall and presented them with a copy of the search warrant. Several of the officers then searched the apartment for the items described in the search warrant. While the search of the apartment was being conducted, Officer Osso conducted a brief "frisk" of Beall and Collier; one other officer, whom the plaintiff has not identified, may have been in the room with Officer Osso during his search of Collier. In searching Collier, who was wearing only a nightgown, Officer Osso touched her abdomen, thighs, back, and waist; his search took no more than a few seconds, and uncovered no items of significance.

The officers completed their search of the apartment by approximately 1:00 a.m. on June 29, 1990. They then left the apartment with various items seized during the search, including a loaded handgun, a plastic bag containing marijuana, a mirror bearing a white powder residue, and a certain amount of cash. On the basis of information and evidence obtained in the search, Collier and Beall were later arrested and charged with various drug offenses. As part of a plea agreement with Beall, the charges against Collier were dropped.

Collier initiated this action on December 19, 1991. The complaint alleges that the

---

4. There is a factual dispute concerning whether the plaintiff and her boyfriend made any "suspicious" sounds during the time after the knock and before the defendants' entry into the apartment. The court finds this factual dispute to be both material and genuine, for reasons set forth below. *See* text accompanying notes 11–12.

5. There is a factual dispute concerning the timing of the defendants' announcement of their identities. The defendants who were at the front door have asserted that they announced their identities as soon as they heard a voice calling out "Who is it?" from within the apartment, but the plaintiff asserts that the defendants did not announce their identities until the moment before they crossed the threshold. The court finds this factual dispute to be both genuine and material, for reasons set forth below. *See* text accompanying notes 9–10.

officers conducted the search at her apartment in a manner that violates her rights under the Fourth and Fourteenth Amendments of the United States Constitution. On this basis, the complaint asserts a claim for damages under 42 U.S.C. § 1983.

## DISCUSSION

The defendants seek summary judgment on all claims alleged in the complaint. The defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980)

(quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

## I

The first issue to be considered concerns the reasonableness of the defendants' entry into the plaintiff's apartment. Our Court of Appeals has held that the Fourth Amendment requires police officers "to make a reasonable effort to provide actual, and not merely *pro forma,* notice of their identity and imminent entry." *Rivera v. United States,* 928 F.2d 592, 606 (2d Cir.1991) (Kearse, J.). The Court has also held that "exigent circumstances" may excuse noncompliance with this rule where the officers reasonably believe there is an imminent danger (1) of bodily harm to persons inside or (2) of destruction of critical evidence. *Id.* at 606; *see also United States v. Spinelli,* 848 F.2d 26, 28 (2d Cir.1988) (applying "exigent circumstances" exception in context of statutory knock-and-announce rule, 18 U.S.C. § 3109). In *Rivera,* the Court of Appeals reversed the district court's decision to grant summary judgment on a Fourth Amendment claim, holding that it was for the finder of fact to determine (1) whether the defendants made any effort to announce their presence and (2) whether there were exigent circumstances that justified an unannounced entry. *Rivera,* 928 F.2d at 606.

The plaintiff has alleged that the defendants violated the Fourth Amendment "knock-and-announce" rule when they entered her apartment.[6] The defendants who entered at the front door argue that summary judgment is appropriate on this claim because the undisputed facts show (1) that they did sufficiently identify themselves prior to entering the apartment and (2) that, even if they did not properly identify themselves, there were "exigent circumstances" that justified an unannounced entry.[7] The defendants who entered at the back door do not assert that they knocked on the door and identified themselves before entering the apartment. Instead, they contend that it

---

6. *See* Plaintiff's Memorandum at 3–4.

7. *See* Donahue Memorandum at 7–8; O'Donoghue/Osso/Haurilak Mcmorandum at 10–11; Petrocelli/Locicero Memorandum at 6–7.

was proper for them to enter the apartment without knocking because the other officers had already entered and had begun to execute the search warrant.[8] The court shall consider the two groups of officers in turn.

## A

█ The defendants who entered at the front door are not entitled to summary judgment on the unreasonable-entry claim. Summary judgment is not appropriate because the plaintiff has raised two genuine issues of material fact: (1) a dispute about the nature and timing of the defendants' announcement of their identities and (2) a dispute about the existence of circumstances that could justify an unannounced entry. These are precisely the factual disputes that were found by the Court of Appeals to preclude summary judgment in *Rivera. See* 928 F.2d at 606.

First, there is a genuine issue of material fact as to whether the defendants at the front door announced their identities in time to give the occupants of the apartment an opportunity to open the door. The defendants contend that they heard someone from inside the apartment say "Who is it?" in response to their knock on the door, and they allege that Officer Donahue responded by stating "Police with a search warrant" or words to that effect.[9] The plaintiff, however, has stated that she heard no response to her question from the defendants even though she was lying on a sofa about a foot from the front door; indeed, the plaintiff asserts that the defendants did not announce their identities until the moment before they entered the door.[10] Without deciding whether the entry would have been reasonable if the police had announced their identities 25–30 seconds before entering the apartment, the court concludes that the entry could be found unreasonable if the plaintiff is correct that the officers did not announce their identities until the very moment before they entered the apartment.

Second, there is a genuine issue of material fact as to whether there were any exigent circumstances—such as suspicious noises inside the apartment—that would have justified an unannounced entry by the defendants at the front door. The defendants contend that they heard "movement" within the apartment before they entered, giving them reason to be concerned for their safety and to be concerned about the potential destruction of evidence.[11] The plaintiff, however, has denied that she or her boyfriend made any noises that could have been interpreted as evidence that they threatened the safety of the defendants or the existence of evidence: she has simply stated that, with the television turned on but not at top volume, she moved from a reclining to a sitting position on the sofa and called out "Who is it?" to the persons at the front door, while her boyfriend walked from the dining room into the carpeted living room and approached the front door without saying anything.[12] Given these allegations, a reasonable finder of fact could conclude that there were no suspicious noises within the apartment or any other "exigent circumstances" that could have excused the defendants' alleged failure to announce their entry.

In sum, the defendants who entered the apartment at the front door—Donahue, O'Donoghue, and Osso—are not entitled to summary judgment on the claim that they violated the Fourth Amendment "knock and announce" rule.[13]

8. *See* Osso/O'Donoghue/Haurilak Memorandum at 10–11; Petrocelli/Locicero Memorandum at 6–7. Attorney Kevin P. Walsh, counsel for defendant Locicero, presented this argument more fully at the hearing in this matter on February 22, 1993. *See* Hearing Transcript at 40–42.

9. *See* Donahue Memorandum, Affidavit of Robert Donahue ("Donahue Affidavit"), at ¶ 6; O'Donoghue/Osso/Haurilak Memorandum, Affidavit of Detective Richard Osso ("Osso Affidavit"), at ¶ 7; O'Donoghue/Osso/Haurilak Memorandum, Affidavit of Detective Neil O'Donoghue ("O'Donoghue Affidavit"), at ¶ 7.

10. *See* Transcript of Deposition of Evelyn Collier of May 26, 1992 (filed April 30, 1993) ("Collier Deposition"), at 37–38.

11. *See* Donahue Affidavit at ¶ 6; Osso Affidavit at ¶ 7; O'Donoghue Affidavit at ¶ 7.

12. *See* Collier Deposition at 37, 69–70.

13. As noted above, the claims against Officer Petrocelli, who also entered the apartment at the front door, have been dismissed with the plaintiff's consent.

## B

■ The defendants who entered at the rear door are entitled to summary judgment on the unreasonable-entry claim. Summary judgment is appropriate because the plaintiff has effectively conceded that the officers entered the rear door of the apartment only *after* the other defendants entered the front door.[14] In light of this concession, the court concludes that the defendants' unannounced entry was reasonable under the circumstances and was therefore consistent with the Fourth Amendment.

■ The Fourth Amendment "knock and announce" rule provides that, in the absence of "exigent circumstances," an unannounced entry by police officers into a private dwelling constitutes an unreasonable search. *See Rivera,* 928 F.2d at 606. This rule requires a careful balancing of competing concerns: the court must weigh the privacy and liberty interests of the occupants, on one hand, against the safety of the officers and the effectiveness of the search, on the other. While this balance tips in favor of requiring an announcement when no officers have yet entered the premises, the balance tips in the other direction when a search is already under way. Before a search has begun, the required announcement benefits the occupants of the premises · by giving them an opportunity to open the door rather than having it opened by force; it may also give them an opportunity to question the officers about the basis for the search prior to their entry. But after a search has begun, an announcement of the imminent entry of addi-

tional officers would provide no comparable benefits for the occupants of the premises; indeed, an announcement in such circumstances would amount to little more than an empty formality, since effective control of the premises would have shifted from the occupants to the officers conducting the search. For these reasons, the court concludes that an ·unannounced entry by police officers is reasonable when the officers are entering *after* a search of that location has begun.[15]

In sum, the defendants at the rear door—defendants Haurilak and Locicero—are entitled to summary judgment on the claim that their unannounced entry of the plaintiff's apartment violated the Fourth Amendment.

## II

■■ The next issue to be addressed concerns the reasonableness of defendant Osso's frisk of the plaintiff. As a general matter, police officers have the authority to detain and "frisk" individuals whom they encounter while executing a search warrant, even if they have no particularized suspicion regarding the persons being searched. *See Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981); *Rivera,* 928 F.2d at 606. Police officers who frisk a person during a search can do so only as a self-protective measure, and the scope of the search must be "limited." *See Rivera,* 928 F.2d at 606–07 (holding that possession of search warrant authorizes "frisk" but not "strip search" of persons on searched premises); *United States v. Barlin,* 686 F.2d 81, 87 (2d Cir.1982) (holding that search of hand-

---

14. *See* O'Donoghue/Osso/Haurilak Memorandum, Affidavit of Lieutenant Samuel Haurilak, at ¶¶ 7–8; Petrocelli/Locicero Memorandum, Affidavit of Paul Locicero, at ¶ 6. The plaintiff did not dispute these allegations in her Statement of Material Facts in Dispute (filed November 9, 1992) or at oral argument. *See* Hearing Transcript at 43–44.

15. At oral argument, defendant Locicero's counsel suggested that the unannounced entry at the rear door was justified because "exigent circumstances" exist as a matter of law once a search has commenced. *See* Hearing Transcript at 42. The court declines to adopt this view of the law for two reasons. First, the court has found that in the circumstances presented here the officers at the rear door simply had no obligation to

announce their identities, since other officers had already entered the front door and taken control of the premises. The court therefore finds it unnecessary to consider whether circumstances existed that would have justified a *breach* of the officers' obligation to announce their identities before entering. Second, courts have used the term "exigent circumstances" to describe emergency situations in which officers must take immediate action to avert the destruction of evidence, the escape of suspects, or the injury of persons at the scene. These emergencies may exist during the first moments of a police search, but they most likely will not exist once the officers have fully taken control of the premises. It would therefore be inaccurate to conclude that "exigent circumstances" exist at any time the police are conducting a search.

bag was "minimal intrusion" and therefore permissible). Under these standards, evidence indicating that a frisk was "excessively rough or intrusive" is sufficient to raise questions of fact that preclude summary judgment. *See Rivera,* 928 F.2d at 607.

The plaintiff has alleged that defendant Osso conducted an excessively intrusive frisk and that each of the other defendants knowingly permitted the allegedly unlawful search to take place.[16] Defendant Osso argues that he is entitled to summary judgment on this claim because (1) the plaintiff herself conceded that the search conformed to the standard procedure for a proper "frisk" and (2) an otherwise proper frisk cannot be deemed improper solely because the search was conducted by a male officer on a female subject or because the female subject was wearing only a thin layer of clothing.[17] The other defendants argue that they are entitled to summary judgment on this claim even if defendant Osso's search did violate the plaintiff's rights, because the plaintiff has not presented evidence to show that any of them could have intervened to prevent the search.[18] The court shall consider the two groups of officers in turn.

### A

Defendant Osso is entitled to summary judgment on the claim that he conducted an excessively intrusive frisk. The plaintiff has raised three possible grounds for finding the frisk unconstitutional: (1) defendant Osso lacked authority to search the plaintiff because the warrant that authorized the search of the apartment did not specifically name the plaintiff; (2) defendant Osso exceeded his authority to search the plaintiff because of the manner in which he rubbed the plaintiff's body; and (3) defendant Osso's search of the plaintiff was unreasonable regardless of the technique employed because it was conduct-

ed by a male officer on a female subject who was wearing only a thin nightgown.[19] Because the court finds all three grounds unavailing, defendant Osso is entitled to summary judgment.

### (1)

It is well-established that a police officer has the "general authority" to detain and search persons whom he encounters on the premises while executing a search warrant. *See Rivera,* 928 F.2d at 606. This general authority permits a police officer to conduct a "limited search" as a "self-protective measure" of any person he encounters during a search, regardless of whether the officer has a particularized suspicion about the person. *See id.* There is no doubt that the officers in this case were executing a search warrant at the time the frisk of the plaintiff occurred; indeed, the plaintiff herself has acknowledged that the defendants showed her the warrant when they entered her apartment.[20] Consequently, it is abundantly clear that defendant Osso had the authority to detain and frisk the plaintiff. The remaining question is whether the frisk that defendant Osso actually conducted was an unreasonable search under the Fourth Amendment.

### (2)

The plaintiff initially challenged the reasonableness of the frisk by alleging that defendant Osso rubbed her body in an excessively intrusive manner, but the plaintiff now appears to have abandoned this position. In her complaint, the plaintiff alleged that the search was unreasonable because it was "an intrusive and physically degrading, embarrassing and humiliating 'pat down' search involving the touching and feeling of her entire body by one or more of the said officers in the presence of the other male officers."[21] The plaintiff subsequently con-

---

16. *See* Plaintiff's Memorandum at 5.

17. *See* O'Donoghue/Osso/Haurilak Memorandum at 12–16.

18. *See* Donahue Memorandum at 12–13; O'Donoghue/Osso/Haurilak Memorandum at 15; Petrocelli/Locicero Memorandum at 9–11.

19. *See* Plaintiff's Memorandum at 5–7.

20. *See* Collier Deposition at 43–44.

21. *See* Complaint at ¶ 11.

ceded, however, that the search took "[j]ust a few seconds" and was conducted in a manner consistent with the procedures for frisks that she had learned in her professional training as a state corrections officer.[22] In addition, the plaintiff testified that only one other officer was present in the same room when defendant Osso conducted the frisk, and the plaintiff could not identify that officer in any way.[23] In light of these concessions, plaintiff's counsel acknowledged at oral argument that the plaintiff was not challenging the frisk based on the manner in which the search was conducted—that is, on the movements of the defendant's hands on the plaintiff's body.[24] For this reason, the court concludes that there is no genuine factual dispute on the issue of whether defendant Osso carried out the frisk in an unreasonable manner.

(3)

■ In light of the concessions that she has made regarding the manner of the search, the plaintiff's claim rests entirely on the argument that the search was unreasonable because it was conducted by a male police officer on a woman who was wearing only a nightgown in circumstances where the officer knew or should have known that a frisk of such a person would be required.[25]

This argument requires the court to balance the privacy interests of the subject of the search against the police officers' safety and the public's interest in effective police work. For the following reasons, the court finds that this balance tips in favor of permitting the search under the circumstances presented here. The court therefore concludes that the search conducted by defendant Osso does not violate the Fourth Amendment.

First, in weighing the imposition of this search on the plaintiff, the court notes that this search was substantially less intrusive than a "strip search." It is true, of course, that a "strip search" can take place where the subject remains partly clothed but is required to reveal private areas—such as genitals or female breasts—for visual inspection. See Conn.Gen.Stat. § 54–33k. In addition, a search may be treated as the equivalent of a strip search if it involves the touching of private areas through a person's clothing. Cf. United States v. Blake, 888 F.2d 795, 800 (11th Cir.1989) (holding that defendant's oral consent to search of his body did not authorize officer to touch his clothing in area of genitals). But in this case it is conceded that the defendant did not require the plaintiff to reveal any private areas of her body for visual inspection, nor did he

22. During her deposition, the plaintiff engaged in an extended colloquy with counsel for defendant Donahue in which she stated that the pat-down conducted by defendant Osso conformed to the detailed procedures for pat-down searches that she had learned in her training as an employee of the Connecticut Department of Correction:

Q [DEFENDANT'S COUNSEL] Were you ever taught to do a pat-down or frisks at the prison?
A [PLAINTIFF] Yes.
Q What were you taught?
A Go along the backside; check their waistline; pat and search their legs, and make sure they weren't concealing any weapons; and their pockets.
Q When you conducted a pat-down at the prison, did you go in the clothing of the individual?
A No.
Q So only the outer clothing?
A Correct. If there's anything in their pockets, I ask them to remove it.
Q You indicated that you had started on the back and then the waist, being the lower body. Did you also conduct pat-downs of people's upper bodies?

A Chest part; come down along the front; and come down along the backside with their arms extended out.
Q If they were wearing a hat, would you search the hat?
A Ask them to remove the hat.
Q How about if they had long hair?
A Have them tousle their hair. If their hair was shoulder length or longer, have them go like that and shake it.
Q So you would not touch them above the shoulders?
A Not that I can recall, no.
Q But you would touch them from the shoulders down through the legs?
A Correct.
Q And the pat-down that you received, was that consistent with the type of pat-down you were taught on how to conduct pat-downs?
A To my knowledge, yes.
Collier Deposition at 60–62.

23. Id. at 64–65.

24. See Hearing Transcript at 52.

25. See id. at 51–52.

touch any private areas of her body through her clothing. Indeed, by the plaintiff's own description, defendant Osso's search was brief and by-the-book: he touched only those parts of her body that are normally included in a frisk search, and he did so in just a few seconds.[26] Given these facts, the court cannot adopt the plaintiff's view that this search amounted to a "strip search" or that it should be subject to the restrictions governing such searches.

Second, in weighing the value of the frisk to the officers, the court notes that the failure to conduct brief frisks during the execution of search warrants would seriously jeopardize the lives and safety of police officers. It is clear that police officers who enter a building to execute a search warrant expose themselves to the risk of assault by persons whom they encounter during the search. To permit police officers to reduce this risk, courts have recognized the officers' right to conduct brief frisks of all persons on the premises being searched. *See Michigan v. Summers,* 452 U.S. at 705, 101 S.Ct. at 2595; *Rivera,* 928 F.2d at 606. These frisks, though limited, serve the essential function of ensuring that police officers have an opportunity to discover concealed weapons. Given the obvious importance of uncovering such weapons, the courts have permitted police officers to frisk all occupants of premises being searched without regard to any particularized suspicion that the officers may have. *See Rivera,* 928 F.2d at 606–07. By the same token, the officers' strong interest in protecting their own safety requires that they be permitted to frisk even those persons who happen to be scantily clad at the time of the search—at least where, as here, the clothing is loose-fitting and could therefore conceal a weapon.

Finally, in weighing the value of the frisk to the public, the court notes that police investigations would be significantly hampered if a frisk of a lightly clad female subject had to be conducted by a female officer in all or most circumstances. In contrast to strip searches, which are relatively rare, frisks occur virtually every time police officers execute a search warrant; moreover, when the purpose of a frisk is to secure the premises that the police are about to search, the frisk must be conducted immediately, not several hours later at the police station. Given the nature of a frisk, and given the relatively low proportion of police officers who are female, it would be a substantial burden on police work to require that every frisk of a lightly clad female subject be conducted by a female officer. This requirement would be burdensome even if it applied only where the police had reason to believe there might be a lightly clad woman on the premises being searched, since nighttime searches of private dwellings are relatively common occurrences. In sum, the elaboration of a constitutional principle requiring frisks of lightly clad female subjects to be conducted only by female officers would substantially hinder the police in the execution of their duties.

For the foregoing reasons, the court finds, in the circumstances presented here, that a frisk of a lightly clad woman by a male officer imposes a relatively small burden on the subject being searched and at the same time serves the important purposes of protecting the officers' safety and ensuring the effective execution of the search warrant. Accordingly, the court concludes that defendant Osso is entitled to summary judgment on the claim that the frisk of the plaintiff violated the Fourth Amendment.

### B

Even if defendant Osso himself was not entitled to summary judgment on this claim, the other defendants would nevertheless be entitled to summary judgment on the claim that they failed to prevent Osso from conducting the search. The plaintiff has alleged that the other defendants are liable for the acts of defendant Osso because all of the officers on the scene are "jointly and severally liable."[27] Defendants Donahue, O'Donoghue, Haurilak, and Locicero argue that they are entitled to summary judgment on this claim because the plaintiff has not provided evidence from which it could reasonably be

---

**26.** *See* note 22, *supra* (quoting Collier Deposition at 60–62).

**27.** *See* Plaintiff's Memorandum at 9.

682

concluded that any of them could have intervened to prevent the frisk.[28]

There is no basis in the law of this Circuit for a theory of joint and several liability for violations of constitutional rights. The Court of Appeals has held that a police officer is liable for the acts of another officer only when he is a "tacit collaborator" in those acts—that is, when his failure to intercede in those acts is a proximate cause of the plaintiff's injury. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988). In reaching this holding, the Court specifically stated that liability should not be imposed on an officer for another officer's acts if "he had no realistic opportunity to prevent them." *Id.* Because the plaintiff has not even alleged that the other defendants had an opportunity to prevent the frisk, a reasonable fact-finder could not conclude on this record that the other defendants were liable for any constitutional violation that occurred during that search.

In sum, the officers who did not participate in the frisk of the plaintiff—defendants Donahue, O'Donoghue, Haurilak, and Locicero— are entitled to summary judgment on the claim that their failure to prevent defendant Osso from conducting the frisk violated the plaintiff's Fourth Amendment rights.

## CONCLUSION

To summarize: the defendants' motions for summary judgment are

(1) DENIED with respect to the claims against defendants Donahue, O'Donoghue, and Osso for violating the Fourth Amendment by entering the plaintiff's apartment through the front door;

(2) GRANTED with respect to the claims against defendants Haurilak and Locicero for violating the Fourth Amendment by entering the plaintiff's apartment through the back door;

(3) GRANTED with respect to the claim against defendant Osso for violating the Fourth Amendment by conducting a frisk of the plaintiff; and

(4) GRANTED with respect to the claim against defendants Donahue, O'Donoghue, Haurilak, and Locicero for violating the Fourth Amendment by failing to prevent the frisk by defendant Osso.

This decision leaves open for trial the questions of (1) whether the defendants Donahue, O'Donoghue, and Osso made a sufficient effort to identify themselves as law enforcement officers prior to their forcible entry into the apartment and (2) whether, in the event these defendants did not give sufficient warning to the occupants of the apartment, their entry was nevertheless justified by "exigent circumstances."

For the reasons stated above, and in accordance with this ruling, Defendant Robert Donahue's Motion for Summary Judgment (filed October 13, 1992) (doc. # 62) is hereby GRANTED in part and DENIED in part; Defendants O'Donoghue, Osso and Haurilak's Motion for Summary Judgment (filed October 15, 1992) (doc. # 66) is hereby GRANTED in part and DENIED in part; and Defendant Officer Paul Locicero's Motion for Summary Judgment (filed October 19, 1992) (doc. # 69) is hereby GRANTED.

It is so ordered.

---

28. *See* Donahue Memorandum at 12–13; O'Donoghue/Haurilak/Osso Memorandum at 15; Petrocelli/Locicero Memorandum at 10.