Colene M. **GARCIA**, Plaintiff,

v.

**NEW YORK STATE POLICE INVESTIGATOR Lance AGUIAR and New York State Police Trooper Barry Friedman, Defendants.**

No. 99–CV–1555.

United States District Court,
N.D. New York.

March 29, 2001.

Goldstein, Metzger Law Firm, Paul Goldstein, Mark J. Metzger, of counsel, Poughkeepsie, NY, for Plaintiff.

Office of the Attorney General, Sean M. Seely, AAG, of counsel, Albany, NY, for Defendants.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983 claiming that a stop and search by Defendants New York State Police Investigator Lance Aguiar and New York State Police Trooper Barry Friedman violated her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Presently before the

Court is Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.

## I. BACKGROUND[1]

On December 6, 1998, at approximately 2:15 a.m., Plaintiff Colene Garcia was driving a vehicle also occupied by three males. Defendants Aguiar and Friedman were driving Westbound in their trooper vehicle on State Route 299 in the Town of Lloyd when they observed a vehicle traveling Eastbound at an apparently high rate of speed. Trooper Friedman operated the radar device and determined Plaintiff to be driving 66 miles per hour in a 55 mile per hour zone. The Troopers then proceeded to stop Plaintiff's vehicle for a violation of the New York State Vehicle & Traffic Law.

Upon approaching the vehicle, the officers detected the scent of burned marihuana coming from inside the vehicle. Friedman inquired who had the marihuana. Plaintiff denied having any marihuana. None of the other passengers responded to Friedman. After obtaining Plaintiff's driver's license[2] and the vehicle registration,[3] Friedman asked Plaintiff to exit the vehicle. Friedman escorted Plaintiff to the front of the police car and conducted sobriety tests, including a breathalyzer test. Friedman then advised Plaintiff that he was going to search her.

---

1. Because Plaintiff failed to comply with N.D.N.Y.L.R. 7.1, including submitting a statement of disputed facts pursuant to N.D.N.Y.L.R. 7.1(a)(3), the following facts are elicited from Defendants' Rule 7.1(a)(3) statement and supporting evidentiary submissions and, for purposes of this motion, are deemed admitted. N.D.N.Y.L.R. 7.1(a)(3). The Court rejected Plaintiff's opposition papers for failure to comply with Local Rule 7.1. *See* discussion *infra* at II(B).

2. After the night in question, it was discovered that Plaintiff had provided Friedman with her sister's driver's license rather than her own.

3. The vehicle was registered to one of the passengers.

Friedman frisked Plaintiff's legs by "patt[ing] them down with both hands on one leg and then c[oming] up and ... put[ting] his hands on the inner thigh up towards the groin area, cupp[ing] it, and then c[oming] down the other side." Pl. Dep., at 63. Friedman then "came up and put his hand between [Plaintiff's] breasts." Pl. Dep. at 68. More specifically, Friedman ran the side of his hand, with the little finger touching Plaintiff, perpendicularly down the middle of Plaintiff's breasts. Next, Friedman "lifted one breast up and the other one up and then he continued around the back." Pl. Dep. at 74. According to Plaintiff, Friedman "cupped the bottom half [of her breast], lifted it up went to the other one, lifted the other one. He didn't like grab my whole breast." Pl. Dep. at 75. Plaintiff further testified that this was a fairly quick process and Friedman "wasn't being perverted." Pl. Dep. at 76. Friedman then patted down Plaintiff's rear pockets. At that point the search ended.

After Friedman concluded searching Plaintiff, Aguiar came over with a marihuana pipe he had found in Plaintiff's purse [4] and inquired who owned the pipe. Plaintiff responded that it was hers. The troopers found marihuana residue in the pipe. Plaintiff was issued a speeding ticket and an appearance ticket for the unlawful possession of marihuana. Plaintiff ultimately pleaded guilty to a violation of N.Y. VEH. & TRAFFIC LAW § 1110(a) in satisfaction of the charges against her.

Plaintiff then commenced the instant action pursuant to 42 U.S.C. § 1983 claiming that she was unlawfully and/or improperly restrained, searched, and imprisoned by Defendants. Compl. ¶ 15. Presently before the Court is Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.

## II. DISCUSSION

### A. Summary Judgment Standard

In addressing Defendants' motion, the Court will apply the familiar standard for summary judgment, which need not be restated here. *Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem*, 44 F.Supp.2d 451, 458 (N.D.N.Y.1999).

### B. Plaintiff's Opposition Papers

The Court rejected Plaintiff's opposition papers because they failed to comply with N.D.N.Y.L.R. 7.1. On or about March 19, 2001, Plaintiff completed new opposition papers and served them on Defendants along with a request for an extension of time within which to file the opposition papers. Defendants then sent the opposition papers and the request for an extension of time to the Court for filing.

■ The Court will now address Plaintiff's request for an extension of time. First, Plaintiff failed to comply with the requirements of FED. R. CIV. P. 6(b) regarding seeking enlargements of time. Once the period of time for performing an act has expired, a party must make a motion for an enlargement of time. FED. R. CIV. P. 6(b)(2). Under N.D.N.Y.L.R. 7.1(b)(1), Plaintiff was required to file proper opposition papers within twenty-one days after having been served with Defendants' motion.[5] Plaintiff met this

---

4. The purse was located on the floor of the vehicle cabin.

5. Defendants served their motion on February 8, 2001. Thus, opposition papers were due on March 4, 2001, including the additional three days permitted by FED. R. CIV. P. 6(e).

deadline, but with papers that did not comply with the local rules. These papers were, therefore, rejected. N.D.N.Y.L.R. 7.1(b)(3). Plaintiff's time to respond has now expired. Thus, to seek an extension of time, Plaintiff was required to move pursuant to FED. R. CIV. P. 6(b)(2), which she did not do.

Second, Plaintiff failed to demonstrate excusable neglect for the failure to file timely conforming opposition papers, as is also required by Rule 6(b)(2). In his letter to the Court, Plaintiff's attorney states "I was away on vacation during the period immediately following the defendants' service of the motion papers and my initial papers submitted in opposition were rejected inasmuch as I did not comply with Local Rule 7.1(a)(3)." Mar. 20, 2001 Metzger Letter. This falls far short of excusable neglect. As noted, although Plaintiff initially submitted timely opposition papers, they failed to conform with the requirements of N.D.N.Y.L.R. 7.1. It is unclear how or why Attorney Metzger's vacation affected his ability to submit conforming papers. Moreover, failure to comply with the local rules does not constitute excusable neglect. All attorneys admitted to this District are expected to be familiar with the local rules, particularly with respect to motion practice. Plaintiff's attorney's failures are all the more egregious in the instant situation in light of the fact that Defendants' Notice of Motion explicitly references and explains the non-movant's obligations under N.D.N.Y.L.R. 7.1(a)(3). Thus, Plaintiff's attorney should have prepared conforming opposition papers in the first instance and his failure to comply with such clear and well-settled principles of motion practice in this District does not constitute excusable neglect.

Third, N.D.N.Y.L.R. 7.1(b)(3) provides that "[a]ny papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule shall not be considered unless good cause is shown.... **Failure to comply with this Rule may result in the imposition of sanctions by the Court.**" (Emphasis in original). As noted, Plaintiff's initial opposition papers did not conform with the requirement of Rule 7.1. They were, therefore, properly rejected under Rule 7.1(b)(3). Plaintiff's second set of opposition papers are untimely. In neither instance has Plaintiff demonstrated sufficient cause why the Court should consider such papers.

Because Plaintiff failed to: (1) timely submit conforming opposition papers as required by N.D.N.L.R. 7.1(b)(3); (2) make a proper motion for leave to file untimely opposition papers as required by FED. R. CIV. P. 6(b)(2); (3) demonstrate excusable neglect why the Court should afford Plaintiff an enlargement of time within which to file opposition papers as required by Rule 6(b)(2); and (4) demonstrate good cause why the Court should accept timely or non-conforming opposition papers as required by N.D.N.Y.L.R. 7.1(b)(3), and because of Rule 7.1(b)(3)'s mandatory language ("shall not be considered"), the Court hereby denies Plaintiff's request to file untimely opposition papers, rejects Plaintiff's opposition papers, and Orders that they be stricken from the record.[6]

The Court will now turn to the merits of Defendants' summary judgment motion.

## C. False Arrest

It does not appear that Defendants actually arrested Plaintiff. Even assuming

---

6. Specifically, docket numbers 26, 27, and 28 should be stricken from the record.

they did, for the following reasons, her false arrest claim must be dismissed.

 Lack of probable cause is an essential element of a false arrest claim. *Smith v. Edwards*, 175 F.3d 99, 105 (2d Cir.1999). Here, Plaintiff admits to speeding and, thus, Defendants had probable cause to stop the vehicle. *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.), *cert. denied*, 513 U.S. 877, 115 S.Ct. 207, 130 L.Ed.2d 136 (1994). Having had probable cause to stop Plaintiff for speeding, Defendants were justified in asking Plaintiff to get out of the car. *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996); *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 333 n. 6, 54 L.Ed.2d 331 (1977). Because the officers personally observed Plaintiff speeding in violation of N.Y. VEH. & TRAFFIC LAW § 1180, they were authorized under state law to make an arrest (which they opted not to do), N.Y. CRIM. PRO. LAW § 140.10(1)(a); N.Y. VEH. & TRAF. LAW § 155; N.Y. PENAL LAW § 10.00(1); *Scopo*, 19 F.3d at 781–82, and had probable cause to do so. *Scopo*, 19 F.3d at 781–82. Further, having pleaded guilty to a violation of N.Y. VEH. & TRAFFIC LAW § 1110(a), Plaintiff is precluded from challenging the validity of her arrest for purposes of a claim under 42 U.S.C. § 1983. *Maietta v. Artuz*, 84 F.3d 100, 102 n. 1 (2d Cir.), *cert. denied*, 519 U.S. 964, 117 S.Ct. 386, 136 L.Ed.2d 303 (1996). Accordingly, Plaintiff's false arrest claim must be dismissed.

## D. Unlawful Search and Seizure

Plaintiff also contends that the search of her person was unlawful and that Friedman improperly touched her during the course of the search.[7]

 "[O]nce the police had probable cause to stop and arrest [Plaintiff], they were entitled to search both h[er] and h[er] 'grab space' in the car." *Scopo*, 19 F.3d at 782. Moreover, upon approaching the vehicle, Defendants smelled what they believed to be burned marihuana. This gave them probable cause to believe that one or more of the vehicle's occupants unlawfully possessed marihuana. *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir.2000); *United States v. Ibarra–Sanchez*, 199 F.3d 753, 760 (5th Cir.1999); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir.1995); *United States v. Jackson*, 652 F.2d 244, 252 n. 6 (2d Cir.), *cert. denied*, 454 U.S. 1057, 102 S.Ct. 605, 70 L.Ed.2d 594 (1981); *United States v. Cantu*, 548 F.2d 1243, 1244 (5th Cir.1977). Thus, the officers were entitled to pat frisk Plaintiff and their doing so did not run afoul of the Fourth Amendment. *United States v. Little*, 945 F.Supp. 79, 83 (S.D.N.Y.1996).

The final issue pertains to the pat frisk of a female suspect by a male police officer. Plaintiff argues that she was inappropriately touched and patted during the course of the search. Pl. Resp. to Interrogs., ¶ 6. This contention is meritless and need not detain the Court long.

 The relevant inquiry is not whether Defendants violated any state law procedures or New York State Police internal procedures, but whether their actions fan afoul of the Fourth Amendment. *Abbott v. City of Crocker, Mo.*, 30 F.3d 994, 997 (8th Cir.1994); *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir.1993); *United States v. Pforzheimer*, 826 F.2d 200 (2d Cir.1987); *see also Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967) ("[T]he question here is not whether the search was authorized by

---

**7.** The Complaint does not challenge the search of Plaintiff's purse.

state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one."); *Tucker v. County of Jefferson*, 110 F.Supp.2d 117, 120 (N.D.N.Y. 2000). Again, Plaintiff contends that she ought to have been searched by a female officer and that the search was inappropriate under the Fourth Amendment because Officer Friedman "cupped" her crotch and breasts. Plaintiff's own deposition testimony reveals that Friedman conducted a pat frisk that consisted of patting down one leg, moving up her leg across her crotch and down the other leg, placing the side of his little finger down the middle of her breasts, checking under each breast, and then patting Plaintiff's rear pants pockets. Plaintiff admitted that Friedman was polite, he was not groping her in a sexual manner, he did not grab her crotch or breasts, he did not touch underneath her clothing, and the search of each area was fairly quick. Friedman patted each area only once. Plaintiff candidly admitted Officer Friedman was not being "perverted." Pl. Dep. pp. 75–76.

While we may all prefer to be searched by the person of our choice and by a person of the gender of our choice, the Fourth Amendment is not that protective under the circumstances of this limited search. Police officers, whether male or female, have a job to perform to and, provided they act appropriately and professionally, their actions in searching an individual whom they have probable cause to believe may be in possession of marihuana and may be of the opposite gender does not constitute a Constitutional transgression.

Furthermore, contrary to Plaintiff's contentions, the search described is precisely what a search should entail. The officer had to check those areas where a suspect could reasonably secrete contraband such as marihuana. With all suspects, male and female, this includes the crotch area, pockets, and the legs. With female suspects, it reasonably includes her cleavage and under each breast. There is simply no evidence before the Court from which a fair-minded jury could reasonably conclude that Friedman touched Plaintiff in an offensive or inappropriate manner. To the contrary, a jury could only reasonably conclude that Friedman touched Plaintiff only to that degree necessary to perform the search. The Court also finds that it was reasonable as a matter of law for Friedman to have conducted the search himself. "[I]t would be unduly burdensome on police to require that, when a female is to be arrested, a female police officer be available on the scene to conduct the search." *Acquino v. Englert*, 1996 WL 668518, 1996 U.S. Dist. Lexis 21092 (E.D.Pa.1996). Accordingly, Plaintiff's claim in this regard must be dismissed.

### E. Qualified Immunity

Even assuming, *arguendo*, Defendants violated Plaintiff's constitutional rights, for the following reasons, they would, nonetheless, be entitled to qualified immunity.

### 1. False Arrest

Both officers testified that they smelled marihuana in the car. At deposition, Plaintiff admitted that the officers stated that they smelled marihuana and inquired as to who owned it. Pl. Dep. at 46. Based upon this, reasonable officers could disagree whether there was probable cause to believe that one or more of the vehicle's occupants possessed marihuana and to search Plaintiff therefor. *Ford v.*

*Moore,* 237 F.3d 156, 162 (2d Cir.2001). Defendants had "arguable probable cause" and, thus, are entitled to qualified immunity for any alleged arrest and detention. *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000).

**2. Search**

■ Turning to the search of Plaintiff's person, Defendants are entitled to qualified immunity. The Court is unaware of, and the parties have not identified, any Supreme Court or Second Circuit case law holding that a relatively non-intrusive, clothed frisk of a female suspect by a male officer constitutes an affront to the Fourth Amendment. *See Collier v. Locicero,* 820 F.Supp. 673, 680–81 (D.Conn.1993). Although there is a clearly established right to be free from unreasonable searches and seizures, it is, at best, unclear whether Friedman's frisk of Plaintiff under these circumstances is unreasonable and officers of reasonable competence could disagree whether Friedman's actions were lawful.

**III. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED IN ITS ENTIRETY.

**IT IS SO ORDERED.**