STATE of Minnesota, Respondent,

v.

Frank Irving WIGGINS, Appellant.

No. A09–1987.

Court of Appeals of Minnesota.

Sept. 14, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Michael F. Cromett, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; KALITOWSKI, Judge; and WRIGHT, Judge.

## OPINION

ROSS, Judge.

This case requires us to determine the constitutionality of a novel police procedure which, as far as we can tell, has never been reviewed on appeal by this court or any other. An officer investigating a suspected drug deal directed appellant Frank Wiggins from a car, ordered him to raise his hands high overhead, and then discovered a handgun in his pocket when she hoisted up his sagging pants that had dropped to hang around his knees. Wiggins appeals from his conviction of possession of a firearm by an ineligible person. We must decide whether the unique wardrobe assist was a search subject to constitutional regulation and, if not, whether it was the kind of seizure-related contact otherwise prohibited by the Fourth Amendment. Because we hold that the officer's tactic was neither a search nor an unreasonable touching during a lawful investigative detention, we affirm.

## FACTS

St. Paul police officer Kara Breci and her partner were on patrol on a November 2008 afternoon in a high drug-activity area when they noticed a car parked with its engine idling in a White Castle parking lot. Officer Breci had seen many drug deals, and several things in addition to the location aroused her suspicion that she was witnessing another one. The driver and a man later identified as appellant Frank Wiggins sat in the front seat, and a third man approached and entered the back seat without any food from the restaurant. No one in the car appeared to be eating. The back-seat occupant began to look down at his lap. As the officers walked to the car they saw the rear occupant drop a plastic bag to the floor. They asked the man what the bag contained, and he replied, "Some weed." Wiggins seemed nervous to Officer Breci while her partner was questioning the rear occupant.

The officers ordered the men out of the car. Officer Breci directed Wiggins to raise his hands above his head. Wiggins wore loose-fitting jeans, which, when he stood, were hanging down around his knees. Officer Breci decided to pat-frisk Wiggins for weapons. But first, she pulled his pants up. As she lifted Wiggins's pants, she felt a hard object in his front

pocket. She asked Wiggins what it was, and he responded that he did not know. The officer surmised that it was a handgun and removed a .380 caliber pistol from Wiggins's pocket.

Because Wiggins had prior violent-crime convictions, the state charged him with possession of a firearm by an ineligible person. Wiggins moved the district court to suppress the gun evidence, arguing that the seizure of the car and its occupants was unsupported by reasonable suspicion and that the officer conducted an unconstitutional frisk when she hoisted his pants. The district court denied Wiggins's motion to suppress, reasoning that the officers lawfully approached the car and ordered the occupants out based on their seeing the marijuana, that Officer Breci reasonably chose not to direct Wiggins to reach for his own pants out of concerns for her own safety, and that Officer Breci did not search Wiggins but instead found the gun by accident as she was "help[ing] him get his pants into a decent position."

Wiggins waived his right to a jury trial and submitted the case to the district court on stipulated facts, preserving for appeal his challenge to the stop and alleged search. See State v. Lothenbach, 296 N.W.2d 854, 857–58 (Minn.1980); Minn. R.Crim. P. 26.01, subd. 4. The district court found Wiggins guilty of possession of a firearm by an ineligible person. Wiggins appeals, challenging the district court's denial of his pretrial suppression motion.

## ISSUE

Did the police officer seize or search Wiggins unconstitutionally when she ordered him out of the car and pulled up his sagging pants?

## ANALYSIS

Wiggins argues that the district court failed to vindicate his state and fed-eral constitutional rights by denying his motion to suppress the gun evidence that resulted from the officer's alleged search. The United States and Minnesota constitutions guarantee the right of persons not to be subjected to "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Evidence seized in violation of this guarantee generally must be suppressed. State v. Jackson, 742 N.W.2d 163, 177–78 (Minn.2007). Wiggins correctly argues that in limited circumstances the supreme court has interpreted the state constitution to provide greater protection than the Fourth Amendment provides. See In re Welfare of B.R.K., 658 N.W.2d 565, 577 (Minn.2003) ("[W]e are free to interpret the Minnesota Constitution as affording greater protection against unreasonable searches and seizures than the United States Constitution, but do not do so cavalierly."). But Wiggins does not contend that this is such a circumstance, and we will analyze his constitutional claims under a single standard. When reviewing a district court's pretrial suppression ruling on undisputed facts, we consider the facts independently and decide de novo whether the undisputed facts warrant suppression as a matter of law. State v. Othoudt, 482 N.W.2d 218, 221 (Minn.1992).

Wiggins retreats somewhat from his argument to the district court, conceding now that the police lawfully approached the parked car and looked inside and that, on observing the bag of marijuana in plain view in the rear passenger compartment, they could also order the three occupants out to search the car. Wiggins challenges only the police conduct that occurred after he left the car. He argues that police unlawfully seized and pat-searched him without having a reasonable, articulable suspicion that he was involved in criminal activity and that he was armed and dan-

gerous. His arguments do not persuade us.

### The Seizure

■■■ Wiggins was seized when the officer ordered him from the car and instructed him to raise his hands. A person has been "seized" when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn.1993). A reasonable person would not have believed that he was free to leave after a police officer discovered illegal drugs in his car and ordered him to get out and to raise his hands. So Wiggins was seized and we must decide whether the seizure was lawful.

■■■ To lawfully seize a person temporarily to investigate a crime, a police officer must have a reasonable, articulable suspicion that the person was or will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *State v. George*, 557 N.W.2d 575, 578 (Minn.1997). This is not a high standard, *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn.2008), and we apply it in view of the totality of the circumstances from an objectively reasonable officer's perspective, *Appelgate v. Commissioner of Public Safety*, 402 N.W.2d 106, 108 (Minn.1987). In doing so, we recognize that trained law enforcement officers may interpret circumstances using inferences and deductions beyond the competence of untrained persons. *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001).

■■■ Wiggins argues that the bag of marijuana found in the passenger compartment cannot justify his detention because spotting the drugs would not reasonably lead an officer to suspect that Wiggins was involved with them. Wiggins casts the episode with himself as the uninvolved occupant of a car in which someone else's contraband just happened to be discovered in the back seat. But his characterization misses the bigger scene: police came upon a stopped and idling car in a fast-food restaurant's parking lot in an area known to them as a place of drug dealing; they observed that the car was occupied by three men having no apparent business with the restaurant, including a man who wandered up to the car and into the back seat; and they watched Wiggins sitting nervously when the back-seat occupant told the officers that the bag he had tried to hide on the floor contained "some weed." These circumstances would lead a reasonable officer to suspect that Wiggins was engaging in a drug deal. The seizure and brief investigative detention that arose from that suspicion therefore did not violate the Fourth Amendment or article I, section 10 of the Minnesota Constitution.

### The Search

■■■ During an investigative detention, an officer may conduct a pat-search if she has a reasonable, articulable suspicion that the suspect might be armed and dangerous. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884–85; *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn.1992), *aff'd*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). This pat-search is "a carefully limited search of the outer clothing . . . to discover weapons which might be used" against the officer. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1885. Wiggins argues that the officers did not reasonably suspect that he was armed and dangerous and that the pat-search revealing the handgun was therefore illegal.

The district court found that the contact that revealed the gun was not a search at all. It described the officer's conduct as "an accidental finding of a gun as she's

trying to help him get his pants into a decent position." The description fits.

As a result of the lawful seizure and the officer's specific directions, which effectively prevented Wiggins from holding his own pants up or raising them, Wiggins was standing in a public parking lot on a busy St. Paul street with his hands high in the air and his pants drooping at his knees. Even assuming that Wiggins intended his pants to sag somewhat, the district court aptly construed the knee-level positioning as "extreme." The record indicates that the officer had decided to conduct a pat-search but that before beginning she wanted to hoist Wiggins's pants. She did not testify about her motive. Perhaps she decided to raise Wiggins's pants to afford him a bit of dignity regardless of her planned search. Or perhaps she wanted to avoid the risk of contacting his genitalia through his underwear during her pat-search. Either way, we agree with the district court that the officer's incidental contact with the gun while lifting Wiggins's pants on decency grounds was not a search.

■■■ A "search" is an intrusion into an area in which a person has a reasonable expectation of privacy. *Terry*, 392 U.S. at 9, 17 n. 15, 88 S.Ct. at 1873, 1878 n. 15; *State v. Hardy*, 577 N.W.2d 212, 215 (Minn.1998). An intrusion that constitutes a search also tends to reveal the contents of the area. *See Hardy*, 577 N.W.2d at 216 (concluding that search occurred when police ordered suspect to open his mouth so they could look for contraband); *State v. Hussong*, 739 N.W.2d 922, 927 (Minn. App.2007) (observing that officer's request for a watercraft operator to show a flotation device was less than a search because the officer did not request that operator reveal any concealed areas).

Officer Breci's adjusting Wiggins's pants was not a search. She hoisted his pants presumably to conceal rather than to reveal. Her contact with his pants may have been a precursor to her pat-search, but it was not itself the search. We need not decide whether Officer Breci would have inevitably discovered the handgun during the eventual pat-frisk or whether the eventual pat-frisk was justified. She had already discovered the gun before she began the pat-frisk, and we hold that her contact with Wiggins's clothing during the constitutionally justified investigative stop under these circumstances was not a search requiring additional justification.

We emphasize that the officer's conduct was objectively reasonable despite its arguably invasive nature. We acknowledge that one might be offended by an officer's realigning of his pants: it is the sort of thing that one usually prefers to do for himself. But Officer Breci's action arose from her legitimate concerns about her own safety and about potential unnecessary embarrassment to Wiggins. By prohibiting Wiggins from raising his own pants, she prevented him from accessing the handgun that she reasonably and correctly suspected he possessed. And by refusing to leave the pants hanging at his knees, she avoided potential claims that she unreasonably humiliated Wiggins by public exposure or by incidentally groping his inadequately covered genitalia during the planned pat-frisk. *See United States v. Ford*, 232 F.Supp.2d 625, 630 (E.D.Va. 2002) (concluding that officer "engaged in a highly invasive search by exposing the defendant's buttocks on the side of a public highway in broad daylight" and that the search was unreasonable under the Fourth Amendment); *Garcia v. N.Y. State Police Investigator Aguiar*, 138 F.Supp.2d 298, 303–04 (N.D.N.Y.2001) (analyzing claim of officer's inappropriate touching of woman's crotch and breasts during pat-search for reasonableness under the Fourth Amend-

ment). And even if Wiggins would take no personal offense at being pat-frisked in only his underwear, we do not interpret the Fourth Amendment as requiring the officer to subject herself unnecessarily to that indignity.

 Wiggins argues that affirming the district court would encourage officers to trample the privacy of young people who participate in the baggy-pants fashion trend. The concern is unwarranted. Our holding arises from the unique facts here. *See State ex rel. Foster v. Naftalin*, 246 Minn. 181, 208, 74 N.W.2d 249, 266 (1956) (stating that precedent cannot be applied "beyond the facts before the court"). Because judicial holdings are limited by their facts, we are confident that our opinion will not be misconstrued to suggest that an officer can freely meddle with a person's clothes to the refrain, "Pants on the ground, pants on the ground" under the guise of providing public assistance.

 Wiggins has not made and the facts would not support the claim that the officer's raising of his pants was a pretext to explore for contraband in his pockets; the officer had no motive to look for justification to search because she had already concluded that a pat-search was justified and she intended to conduct one immediately after Wiggins's pants were suitably rearranged. Wiggins also did not raise any credibility challenge in the district court to the officer's underlying testimony that her cursory encounter with the outside of his pants led her immediately to perceive the detail that Wiggins had "a semiautomatic handgun" in his pocket. *See Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993) (stating that the warrantless seizure of contraband is justified when an "officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediate-

ly apparent"). Our holding rests on the uncontested fact that the officer became immediately aware that Wiggins possessed a handgun after she inadvertently felt the gun through his pants while realigning them to allay her legitimate safety and decency concerns.

Wiggins raises other arguments that mistakenly assume that the officer's touching of his pants constituted a search. We do not address these arguments.

### DECISION

Police lawfully detained Wiggins after reasonably suspecting that he and others were exchanging illegal drugs. The officer reasonably ordered Wiggins to raise his hands and reasonably decided to adjust his excessively sagging pants. The adjustment did not constitute a search and was not conducted in a manner that raises any constitutional concerns.

**Affirmed.**