Dennis G. **HEDSTROM**,
petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC
SAFETY**, Appellant.

No. C1–87–340.

Court of Appeals of Minnesota.

Aug. 4, 1987.

Paul R. Johnson, Alexandria, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN, JJ.,* with oral argument waived.

## OPINION

CRIPPEN, Judge.

Respondent was arrested for driving while under the influence. Respondent refused to submit to testing, his license was revoked, and he petitioned for judicial review. The trial court rescinded the revocation. The Commissioner appeals, and respondent seeks review on certain trial court findings against his interest. We reverse.

### FACTS

While on duty on May 1, 1986, Deputy Sheriff Scott Eustice received a radio dispatch message on a caller's report that a vehicle occupied by an intoxicated person was situated in an identified field. Eustice, who was three to four miles away, proceeded to the reported location; he arrived at 1:10 or 1:15 a.m., about five minutes after getting the message.

Eustice saw a vehicle sitting in a field and facing east towards a north-south road, approximately 75 feet from the road. The officer stopped his vehicle, turned on his red lights, and started to walk towards the vehicle. The driver's door of the vehicle was open, and respondent Dennis Hedstrom was standing about three feet away. Respondent met the officer halfway between their vehicles. When respondent first approached the officer, he believed that a wrecker had arrived. Respondent had apparently told the person who had called the police that he wanted a wrecker. The officer asked to see respondent's driver's license. Respondent had to go back to his car to get it, and the officer walked back to the vehicle with him. The officer observed that the keys were still in the ignition.

Eustice did not actually see respondent sitting behind the wheel of the car, nor did he observe a dome light. He acknowledged it was possible that respondent could have come from behind his vehicle. He did not know how long it had been since the engine had been running, and did not check the hood to see if it was still warm. He did not know how long the vehicle had been in the field. Eustice did not see anyone else on the scene while he was there, nor did respondent refer to anyone else being there. Respondent told the officer that he was tired and had driven into the ditch to rest.

The officer explained respondent had been driving west, when he approached a T-intersection. At the point where he had to turn right or left, he had instead gone straight ahead into the field and looped around. The field was plowed, and possibly was planted with oats.

Respondent had very slurred speech and exhibited very poor coordination, swaying as he walked. The officer, who has no sense of smell, could not detect the odor of alcohol. He formed the opinion that respondent was driving while under the influence and arrested him for that offense.

Respondent refused testing pursuant to the implied consent law, and his license was revoked. The trial court rescinded the revocation; the Commissioner appeals from the trial court order, and respondent seeks review.

### ISSUE

Did the officer have probable cause to believe that appellant was driving at a time when he was under the influence?

### ANALYSIS

If an officer does not have probable cause to believe that a person was driving, operating, or in physical control of a motor vehicle in violation of Minnesota Statutes § 169.121, the officer may not require a test under the implied consent law. Minn. Stat. § 169.123, subd. 2(a) (1986). The trial court determined that the sheriff's deputy had probable cause to believe respondent had been driving at some point earlier in

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

the evening, and probable cause to believe respondent was under the influence. Because the court found there was no evidence to connect the time of drinking and driving, it rescinded the revocation. We conclude the officer had probable cause to believe respondent had been driving while under the influence.

■ Probable cause exists when all the facts and circumstances would warrant a cautious person to believe the suspect was driving a motor vehicle while under the influence. *State v. Olson,* 342 N.W.2d 638, 640 (Minn.Ct.App.1984). It must be evaluated from the point of view of a "prudent and cautious" police officer at the time of arrest, and "[g]reat deference should be paid to the officer's experience and judgment." *Johnson v. Commissioner of Public Safety,* 366 N.W.2d 347, 350 (Minn.Ct. App.1985) (citations omitted).

Where there is no evidence whatsoever connecting the time of driving with the time of an officer's observations, the officer's proof of probable cause is inadequate. *Dietrich v. Commissioner of Public Safety,* 363 N.W.2d 801, 803 (Minn.Ct.App. 1985). *See Delong v. Commissioner of Public Safety,* 386 N.W.2d 296, 298–99 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. June 13, 1986). This is the situation here.

■ Respondent, who had approached a T-intersection in which he had to turn right or left to stay on a road, instead drove straight ahead into a plowed field and looped around. The fact that respondent could have avoided the accident by making a normal turn bears on the determination of whether he was under the influence at the time of the accident, prior to the time he was seen by the deputy sheriff. *Eggersgluss v. Commissioner of Public Safety,* 393 N.W.2d 183, 185 (Minn.1986). The officer arrived at the scene of the mishap at 1:15 a.m. Respondent was present and admitted he had driven his car to the place where it was found. The car keys were in the ignition. Respondent was not disabled, but was standing outside the vehicle. He was not resting at the site, but wanting to be towed. The officer arrived almost immediately after being dispatched. There was no indication that respondent had left the scene and returned, or that he had consumed alcohol since the time of the accident. Respondent did nothing and said nothing to suggest he had been at the scene for several hours.

As to the possibility that respondent drank after he drove, the case is governed by the supreme court's rationale in *Eggersgluss. Id.* (the courts must not put too much importance on the Commissioner's inability to prove a negative, specifically, that the driver did not drink after an accident). The trial court noted that in *Eggersgluss* the officer had heard from a passenger that the driver had done some drinking before he drove. The supreme court in *Eggersgluss* emphasized that each case must be decided on the totality of the circumstances, and we see no basis for distinguishing the determination in that case on the basis of this single item of evidence. Here, as in *Eggersgluss,* there was no evidence prompting the officer to suspect the driver drank after driving over the side of the road.

A prudent and cautious officer facing the circumstances here is entitled to believe that the person at the scene has been driving his vehicle while in a condition substantially the same as when he was found.

2. The trial court also found that respondent was in physical control of his vehicle when the officer arrived. Appellant contends this finding compelled the court to sustain revocation of respondent's license. Respondent argues that this finding was erroneous, because respondent was not found inside the vehicle. Since the officer had probable cause to believe respondent had been driving the vehicle while under the influence, it is not necessary to review these additional issues in the case.

**DECISION**

The order of the trial court rescinding the revocation is in conflict with the standard of law on probable cause.

Reversed.