STATE of Minnesota, Appellant,

v.

Loren Lee LADUCER, Respondent.

No. A03–1533.

Court of Appeals of Minnesota.

March 30, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Kathleen A. Heaney, Sherburne County Attorney, Sean C. Dillon, Assistant County Attorney, Elk River, MN, for appellant.

Janice L. Mansell, Anoka, MN; and Mark D. Nyvold, St. Paul, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; PETERSON, Judge; and FORSBERG, Judge.

## OPINION

FORSBERG, Judge.[*]

This is an appeal from a pretrial order of the Sherburne County District Court suppressing evidence of intoxication and dismissing, for lack of probable cause, two counts of first-degree driving while under the influence of alcohol. The state appeals from the dismissal of count one for violation of Minn.Stat. § 169A.20, subd. 1(1) (2002). Because the arresting officer had probable cause to arrest appellant for driving while under the influence of alcohol and to invoke the implied consent law, we reverse.

## FACTS

At approximately 5:00 p.m. on May 12, 2003, State Trooper John Hodnefield received information through Sherburne County dispatch regarding a reckless driver in a blue van with out-of-state license plates passing vehicles on the shoulder and tailgating on Highway 10 near the City of Big Lake. At approximately the same time, Officer Dave Hurd of the Elk River Police Department received a call from Sherburne County dispatch regarding a possible road-rage incident on Highway 10 involving the same van.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Hurd then observed the van in a Hardee's parking lot and detained it. Hodnefield arrived at the scene, and Hurd informed him that the driver had backed up almost hitting Hurd's squad before stopping. There were two people in the van who looked substantially alike. While speaking with Hodnefield about the complaints of reckless driving, the person in the driver's seat stated that he had not been driving but then said "that he was passing these other vehicles and that the only reason that they were turning him in was that the girlfriend of the one smiled at them."

The driver did not produce a driver's license but identified himself as "Matt Balsimo" and stated his date of birth as February 13, 1967. Hurd entered the name given into his on-board computers and obtained a readout stating the name and birth date given were not on file. Hurd then demanded the driver reveal his identity, and he identified himself as Loren Laducer. Hurd discovered Laducer's driving privileges were revoked.

Laducer was arrested for providing false information to a police officer, driving after revocation, and careless driving. Since Laducer and the passenger traveling with him looked substantially alike, Laducer was transported to the Sherburne County Jail for booking, positive identification, and subsequent release after assigning a court date.

Laducer was not cooperative at the jail and was placed in a holding cell alone. At approximately 8:00 p.m., Sherburne County Correctional Officer Jeff Bednarek opened the door of the cell and detected a strong smell of alcohol coming from Laducer. Bednarek asked Laducer if he had been drinking that day, and Laducer responded that he had consumed some beer. Laducer was told that he could not be released from jail if he was under the influence of alcohol and did not have a sober driver to pick him up. Laducer said he had no one that would pick him up. Bednarek told Laducer that he would be released with a court date if he blew into a portable breath tester and it registered .000 blood alcohol content. Laducer agreed to take the test and it registered a reading of .168 blood alcohol content.

At approximately 8:50 p.m., Hodnefield called the jail to determine if Laducer had been positively identified. He was informed that Laducer had "[blown] a .16 on the PBT." Hodnefield commented that he had not smelled alcohol during his interactions with Laducer but he returned to the jail and detected an odor of alcohol within Laducer's cell. Hodnefield told Laducer that he knew "[Laducer] had failed the PBT or that he had been drinking." Laducer responded by saying he had been drinking but again denied that he had been driving. Hodnefield then arrested Laducer for driving under the influence and invoked the implied consent law. Hodnefield made a telephone available to Laducer and, after talking with an attorney, Laducer agreed to take a breath test. The Intoxilyzer 5000 breath test, administered by Hodnefield, produced a .11 blood alcohol content reading.

Laducer was charged with one count each of violating (1) Minn.Stat. § 169A.20, subd. 1(1) (2002) (first-degree driving while under the influence of alcohol); (2) Minn. Stat. § 169A.20, subd. 1(5) (2002) (first-degree driving under the influence of alcohol where the person's alcohol concentration is measured at 0.10 or greater within two hours of driving); (3) Minn.Stat. § 171.22, subd. 1(4) (2002) (providing fictitious name or date of birth to a police officer); (4) Minn.Stat. § 169.13, subd. 2 (2002) (careless driving); and (5) Minn. Stat. § 171.24, subd. 2 (2002) (driving after revocation).

On Laducer's pretrial motion, the district court found a correctional officer is not a "peace officer" and as such cannot administer a preliminary breath test under Minn.Stat. § 169A.41 (2002). The court further determined that without the results of the correctional officer's breath test there was no probable cause to arrest Laducer for driving under the influence of alcohol or to invoke the implied consent law. The district court suppressed the evidence of intoxication and dismissed the two charges of first-degree driving while under the influence of alcohol, counts one and two of the complaint. This appeal, as to the charge under Minn.Stat. § 169A.20, subd. 1(1), followed.

## ISSUE

1. Does Minn.Stat. § 169A.41 prohibit the results of a breath test administered by a non-peace officer from being considered by a peace officer in forming probable cause to arrest for violation of Minn.Stat. § 169A.20?

2. Did the arresting officer have probable cause to arrest appellant for driving while under the influence of alcohol and invoke the implied consent law?

## ANALYSIS

■■■ 1. If the state appeals pretrial suppression orders, it " 'must clearly and unequivocally' show both that the trial court's order will have a 'critical impact' on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998) (quoting *State v. Zanter*, 535 N.W.2d 624, 630 (Minn.1995)). Critical impact exists where the lack of the suppressed evidence reduces the likelihood of a successful prosecution. *State v. Kim*, 398 N.W.2d 544, 551 (Minn.1987). Here, the district court dismissed the charge of first-degree DWI, count one of the com-

plaint. Thus, the critical-impact requirement is met.

■■ To decide whether the district court clearly and unequivocally erred in issuing the order appealed, we must first determine whether the results of the breath test administered to Laducer by Correctional Officer Bednarek may be relied on by State Trooper Hodnefield in forming probable cause to arrest for violation of section 169A.20 and invoke the implied consent law under Minn.Stat. § 169A.51 (2002). This inquiry requires consideration of Minn.Stat. § 169A.41 (2002), which controls the use and procedure of a preliminary screening breath test. Section 169A.41 provides, "When a peace officer has reason to believe from the manner in which a person is driving, operating, controlling, or acting upon departure from a motor vehicle ... the officer may require the driver to provide a sample of the driver's breath for a preliminary screening test." Minn.Stat. § 169.41, subd. 1. The results of the preliminary screening test "must be used for the purpose of deciding whether an arrest should be made and whether to require the tests authorized in section 169A.51 (chemical tests for intoxication), but must not be used in any court action" unless one of seven exceptions applies. Minn.Stat. § 169.41, subd 2.

Here, the state recognizes that Correctional Officer Bednarek is not a peace officer and therefore is not authorized to administer a preliminary breath test under section 169A.41. The state contends, however, that the result of the breath test administered by Bednarek may be relied on by a licensed peace officer in forming probable cause to arrest for driving while under the influence of alcohol and invoke the implied consent law. We agree.

A preliminary breath test, administered pursuant to section 169A.41, is not used for

the ultimate determination of a driver's alcohol concentration. *See Windschitl v. Comm'r of Pub. Safety*, 355 N.W.2d 146, 149 (Minn.1984) (discussing the predecessor statute Minn.Stat. § 169.121 (1982)). And, generally, the result of a preliminary breath test is prohibited from being used as evidence of intoxication in any court action. Minn.Stat. § 169A.41, subd. 2. Nevertheless, section 169A.41 does not prohibit a correctional facility from testing for intoxication prior to releasing an individual from custody and does not prohibit the results of such a test from being communicated to a peace officer. In this context, State Trooper Hodnefield's reliance on the preliminary-breath-test result is no different from relying on information from a private citizen. *See Johnson v. Comm'r of Pub. Safety*, 394 N.W.2d 614, 616 (Minn. App.1986) (stating officer may rely on information provided by private citizen to form probable cause that driver was driving while under the influence of alcohol); *Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn.1980) (stating information from a private citizen may be presumed reliable).

We note that this case is distinguishable from the holding in *State, Lake Minnetonka Conservation Dist. v. Horner*, in which the supreme court was concerned with the problem of non-peace officers enforcing boating safety laws. 617 N.W.2d 789, 794–95 (Minn.2000). The court found this "directly contravenes the statutory provisions regarding breath testing and arguably undermines the legislative scheme for gathering evidence of intoxication and the training, certification, and licensure of peace officers." *Id.* at 794. But, here, the correctional officer was not investigating intoxication for the purpose of enforcing driving safety laws. Rather, Bednarek administered the breath test under Sherburne County's jail policy and procedures for releasing intoxicated individuals from custody. This policy is for the stated purpose of protecting "the safety of the inmate and the liability of the county."

▮ 2. "Probable cause to arrest exists where the objective facts are such that under the circumstances a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *Horner*, 617 N.W.2d at 795 (quotations omitted). The inquiry is objective, not subjective. *State v. Riley*, 568 N.W.2d 518, 523 (Minn.1997). In evaluating probable cause, a reviewing court must consider the totality of the circumstances. *Groe v. Comm'r of Pub. Safety*, 615 N.W.2d 837, 840 (Minn.App. 2000), *review denied* (Minn. Sept. 13, 2000). While probable cause to arrest requires more than mere suspicion, it requires less than the evidence necessary for conviction. *State v. Camp*, 590 N.W.2d 115, 119 n. 9 (Minn.1999).

▮ Here, Laducer was first arrested at a Hardee's parking lot for providing false information to a peace officer, driving after revocation, and careless driving. At this time, Hodnefield witnessed Laducer sitting in the driver's seat of the van reported by private citizens to have been driving recklessly. *See State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 880–81 (1972) (stating an officer is not required to see the person actually driving to believe that the person was driving a motor vehicle while under the influence). At the time Hodnefield arrested Laducer for driving while under the influence of alcohol, Hodnefield also knew a preliminary breath test had shown Laducer's blood alcohol content to be .168, Hodnefield had detected the odor of alcohol, and Laducer had admitted to Hodnefield that he had been drinking that day. *See Holtz v. Comm'r of Pub. Safety*, 340 N.W.2d 363, 365 (Minn.App.1983) (stating an officer

need only have one objective indication of intoxication to constitute probable cause to believe a person is under the influence). Moreover, there was no evidence suggesting Laducer drank between the time of being arrested at the Hardee's parking lot and the time Hodnefield detected the odor of alcohol and Laducer admitted to drinking. *See, e.g., Hedstrom v. Comm'r of Pub. Safety*, 410 N.W.2d 47, 49 (Minn.App. 1987) (finding probable cause where driver exhibited indicia of intoxication and there was no indication that the driver had consumed alcohol after the time of the accident but before police arrived at the scene). Thus, given the totality of the circumstances, Hodnefield had sufficient, objective facts to form probable cause for arrest for first-degree driving while under the influence of alcohol under section 169A.20.

■ Moreover, we note that even without the results of the preliminary breath test administered by Bednarek, Hodnefield had probable cause to believe Laducer was intoxicated. An admission of drinking, coupled with other indicators of intoxication, is sufficient for probable cause to arrest. *State v. Grohoski*, 390 N.W.2d 348, 351 (Minn.App.1986), *review denied* (Minn. Aug. 27, 1986). Here, Hodnefield detected an odor of alcohol, and Laducer told Hodnefield he had been drinking. Thus, Hodnefield had probable cause to arrest regardless of the preliminary-breath-test result.

Finally, because Hodnefield had probable cause to make the arrest for driving while under the influence, the arrest was lawful and the subsequent Intoxilyzer test, administered by Hodnefield, is admissible evidence of intoxication pursuant to the implied consent law. *See* Minn.Stat. § 169A.51, subd. 1 (stating "test must be administered at the direction of a peace officer" and "may be required of a person

when an officer has probable cause to believe the person was driving ... in violation of section 169A.20 ... and ... the person has been lawfully placed under arrest for violation of section 169A.20").

### DECISION

The district court's pretrial order suppressing evidence of intoxication and dismissing the charge for violation of Minn. Stat. § 169A.20, subd. 1(1), is reversed.

**Reversed.**