STATE of Minnesota, Appellant,

v.

Joel Clyde HUSSONG, Respondent.

No. A07–785.

Court of Appeals of Minnesota.

Oct. 16, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Special Assistant County Attorney, Shakopee, MN, for appellant.

Robert E. Oleisky, Minneapolis, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; WORKE, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

The state appeals from a pretrial order suppressing evidence of a boater's intoxication in a boating-while-intoxicated prosecution. The district court held that a deputy who stopped Joel Hussong's boat for a moving violation did not have probable cause or reason to suspect any other offense until after the deputy initiated an unconstitutional safety-equipment inspection of the boat. Minnesota law requires all watercraft to carry an immediately available Type IV personal flotation device. Because Hussong did not have a Type IV device in plain sight of the deputy who stopped his small, open boat, the deputy had probable cause to believe Hussong was violating the law and could therefore ask Hussong to show him the device. While inquiring about the flotation device the deputy developed reasonable, articulable suspicion that Hussong was intoxicated, and his investigation of this offense provided probable cause to arrest Hussong for boating while intoxicated. We therefore reverse the district court's suppression of evidence.

## FACTS

In July 2006 Deputy Brett Krick was patrolling Prior Lake in a patrol boat. Joel Hussong was also operating a boat on the lake. After Deputy Krick observed Hussong fail to yield to the patrol boat's right of way, the deputy activated his emergency lights and stopped Hussong's boat. Deputy Krick positioned his boat next to Hussong's boat so the driver's sides of the boats were adjacent. Because of windy conditions, Hussong's passenger and a deputy accompanying Deputy Krick held the two boats together.

Deputy Krick remained on his boat and asked Hussong whether he knew why Krick had stopped the boat. Hussong indicated he did not, and Deputy Krick explained the moving violation. Deputy Krick then initiated a safety-equipment inspection of the boat. He asked Hussong to produce two life jackets and Hussong did so. He then asked Hussong to show him a Type IV personal flotation device. He testified that Hussong "fumbled around the boat" looking for one but could not find the required device. Deputy

Krick then asked to see a fire extinguisher, and Hussong presented his fire extinguisher.

Deputy Krick found Hussong's fumbling to be suspicious and he smelled alcohol. He asked Hussong how much he had drunk, and Hussong admitted to drinking two beers. Deputy Krick administered several field sobriety tests and a preliminary breath test. Based on the results, he arrested Hussong for boating while intoxicated. A later test indicated that Hussong's blood-alcohol concentration was .11.

Following a contested omnibus hearing, the district court granted Hussong's motion to suppress the evidence, holding that Deputy Krick lawfully stopped Hussong's boat but lacked probable cause or reasonable, articulable suspicion to expand the scope of the initial stop. Because the court held that the request for Hussong to produce safety equipment was unconstitutional, it suppressed all evidence obtained after Krick made his request. The state appeals.

## ISSUES

I. Is the district court's finding that the deputy did not detect the odor of alcohol before he asked the operator of a lawfully stopped watercraft to show him required safety equipment clearly erroneous?

II. Does the absence of a Type IV personal flotation device in plain sight of an officer who has lawfully stopped a watercraft permit the officer to ask the watercraft's operator to present the device?

## ANALYSIS

Although Hussong challenged the existence of a moving violation before the district court, on appeal the parties do not dispute the validity of the initial stop for Hussong's failure to yield to Krick's right of way. *See* Minn. R. 6110.1200, subp. 1(C) (2005) (requiring yield to watercraft farthest to right when two watercraft risk collision); *see also State v. George*, 557 N.W.2d 575, 578 (Minn.1997) (stating that violation of traffic regulation, however insignificant, provides basis for stopping vehicle). But they dispute Deputy Krick's authority to perform the safety-equipment inspection and administer the field sobriety tests that led to Hussong's arrest. The state asserts three independent bases for reversing the district court: (1) Deputy Krick had probable cause to arrest Hussong for boating while intoxicated before he began the safety check; (2) Deputy Krick had reasonable articulable suspicion that Hussong was violating the law because he did not have a Type IV personal flotation device in plain sight, which permitted the deputy to expand the scope of the stop; and (3) suspicionless safety checks are constitutional, and Deputy Krick did not need reasonable articulable suspicion or probable cause that any other criminal activity was occurring.

We review a pretrial order suppressing evidence by independently examining the facts to determine whether, as a matter of law, the district court erred in its decision. *State v. Askerooth*, 681 N.W.2d 353, 359 (Minn.2004). We will not reverse the district court's factual findings, however, unless they are clearly erroneous. *State v. Ruoho*, 685 N.W.2d 451, 458 (Minn.App.2004), *review denied* (Minn. Nov. 16, 2004).

### I

We first address the state's argument that Deputy Krick had probable cause to arrest Hussong before conducting the challenged safety check. Probable cause to arrest exists when there are objective facts that would lead a reasonable person to believe that a crime has been

committed. *State v. Laducer*, 676 N.W.2d 693, 697 (Minn.App.2004). We conduct an objective inquiry and review the totality of the circumstances to determine whether probable cause existed. *Id.* The state asserts that soon after the stop, Deputy Krick had probable cause to arrest Hussong for boating while intoxicated based on Hussong's driving conduct, the odor of alcohol, and Hussong's admission to drinking two beers. Central to the state's position is its factual contention that the deputy smelled alcohol and obtained Hussong's admission to drinking before he asked Hussong to present the safety equipment. But the district court's findings that these events occurred after Deputy Krick initiated the inspection are not clearly erroneous, and without these additional facts Deputy Krick did not have reason to believe that Hussong was intoxicated.

Deputy Krick testified that he questioned Hussong about his alcohol consumption when he smelled alcohol. Hussong testified that the deputy did not ask him whether he had been drinking until after he asked him to produce the safety equipment. Deputy Krick's testimony did not directly contradict Hussong's testimony, and, even if it had, credibility determinations are for the factfinder. *See State v. Colbert*, 716 N.W.2d 647, 653 (Minn.2006) (stating that witness-credibility determinations are exclusive province of factfinder). Deputy Krick testified that nothing about Hussong's driving conduct was peculiar except for his failure to yield. He stopped the boat to "have a little chat with him about the fact that he could have caused an accident." He testified that "[a]fter I explained the reason for the stop to [Hussong], I proceeded to do a safety check on the boat." He then explained that he observed Hussong fumbling while looking for the Type IV personal flotation device. When asked whether Hussong's behavior had raised any suspicions of other criminal

activity, Deputy Krick again noted the fumbling and stated, "any time somebody is fumbling around for things you begin to suspect that [the person] possibly ha[s] been drinking."

The state points to Deputy Krick's responses to two questions to support its position. Referring to his requests for safety equipment, he was asked, "At that point and time while [Hussong] was doing these various tasks that you asked him to do, had you smelled any alcohol up until that juncture?" Deputy Krick responded, "Yes, when I was talking to him." He also testified that he smelled alcohol "very soon" after he stopped Hussong. But his testimony does not clearly establish a time frame because the first question refers to the time up until Hussong was in the act of retrieving the safety devices, meaning that Deputy Krick could have detected the odor of alcohol while asking him to find the items. Similarly, the deputy's testimony that he smelled alcohol soon after he stopped the boat is not dispositive because the record is unclear as to how much time elapsed between explaining the basis for the stop and initiating the safety check. When asked about Hussong's signs of intoxication, Deputy Krick pointed to several facts, in this order: Hussong's inability to perform manual tasks when looking for the flotation device; the odor of alcohol; and Hussong's admission to drinking two beers. After making all of these observations, Deputy Krick decided to administer the field sobriety tests. The district court's finding that the deputy did not detect the odor of alcohol and obtain the admission from Hussong until after he began the safety check is not clearly erroneous.

■ Hussong's failure to yield to the patrol boat is alone insufficient to constitute probable cause to arrest for boating

while intoxicated. Because Deputy Krick did not develop a basis to believe that Hussong was boating while intoxicated until after he began the safety check, we must determine whether asking Hussong to present the safety equipment after he stopped Hussong's boat exceeds the constitutional limits of the deputy's authority.

## II

■ This case calls into question the quantum of evidence necessary before a police officer may ask the operator of a watercraft to present required safety equipment. All watercraft using state waters must be "equipped with the number and type of personal flotation or lifesaving devices prescribed by the commissioner [of natural resources]." Minn.Stat. § 86B.501, subd. 1(a) (2006). The Department of Natural Resources has adopted rules requiring every watercraft to have one Type I, II, or III personal flotation device for each person on board, to carry a Type IV personal flotation device, and to have a fire extinguisher. Minn. R. 6110.1200, subps. 3(A), 5 (2005). Types I, II, and III are wearable flotation devices, while a Type IV device is throwable. The rules further specify that a Type I, II, or III personal flotation device must be "either readily accessible or worn," while a Type IV device must be "immediately available." *Id.*, subp. 3(D)(4)(c) (2005). The rules define "readily accessible" as "easily retrievable within a reasonable amount of time in an emergency." *Id.*, subp. 3(D) (2005). "Immediately available" means "easily reached in time of emergency." *Id.* As examples, the department has stated that "[p]ersonal flotation devices located in locked containers, under heavy objects or left in shipping bags are not considered readily accessible or immediately available." *Id.*

■ Based on these rules and the facts before the court, we conclude that, applying any standard of evidence, Deputy Krick's request for Hussong to present a Type IV personal flotation device was not unconstitutional. An officer may expand the scope of a stop for investigative purposes if, after the stop, he develops reasonable articulable suspicion of other criminal activity. *State v. Wiegand,* 645 N.W.2d 125, 135 (Minn.2002). But probable cause is required to support a warrantless search of an easily movable means of transportation, like a boat. *See State v. Search,* 472 N.W.2d 850, 852 (Minn.1991) (discussing automobile exception to warrant requirement); *see also Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925) (distinguishing between, for Fourth Amendment purposes, stationary structures and movable vehicles like automobiles and motor boats). We believe that Deputy Krick's inquiry, asking Hussong to *show* him a flotation device instead of asking merely whether he *had* one, is less than a search, which would require probable cause, but more than a request for consent to search, which would require reasonable, articulable suspicion. *See, e.g., State v. Fort,* 660 N.W.2d 415, 419 (Minn. 2003) (holding that officer did not have reasonable articulable suspicion to support request for consent to search). Yet at oral argument before this court, Hussong's counsel repeatedly conceded that Krick's requests were neither substantially intrusive nor unreasonable. Although he later attempted to retract his statements as to reasonableness (but not intrusiveness), he could not articulate how the deputy's request for Hussong to produce a required device was unreasonable under the circumstances. Neither can we. Deputy Krick did not board Hussong's boat and he did not request that Hussong reveal any concealed areas of the boat. He asked Hus-

song only to show him a required device that must be immediately available.

We need not resolve whether the deputy's request to see the required device is an intrusion so minimal that it is similar to a request for consent or whether the higher standard of probable cause for a search applies. This is because we conclude that Deputy Krick had probable cause (and therefore also reasonable suspicion) to believe that Hussong was not carrying a required personal flotation device on the boat he was operating. *See* Minn. Stat. § 86B.811, subd. 1 (2004) (specifying that operating boat in violation of chapter 86 or rule adopted by commissioner of natural resources is misdemeanor). The state concedes that the rules do not mandate carrying a Type IV personal flotation device in plain sight. But the rules clearly require a Type IV device to be attainable with minimal delay; and common sense supports the requirement since the throwable device would be of little use in an emergency if it could not be instantly accessed for immediate use. We recognize that a boater may lawfully keep the flotation device beneath clothing or a towel, outside the scope of an observer's plain view but still immediately available in an emergency, assuming the occupants are aware of its concealed location. Because the rules require a Type IV device to be immediately available and easily reachable, however, the absence of one in plain sight provides probable cause to believe that the operator of the watercraft is violating the applicable statute and rules.

We stress that the threshold for probable cause is far less than the standard of proof required to convict. Probable cause requires only "a probability or substantial chance of criminal activity, not an actual showing of such activity." *State v. Harris*, 589 N.W.2d 782, 790–91 (Minn. 1999) (quotation omitted); *see also State v.*

*Olhausen*, 681 N.W.2d 21, 25 (Minn.2004) ("The standard for the sufficiency of the evidence to support a conviction is greater than probable cause."). So our opinion does not imply that the absence of the device from plain view would in all circumstances be sufficient to support a conviction, but in this case it establishes probable cause. Regardless of whether the minimum quantum of evidence necessary for an officer to ask a boater to present a Type IV personal floatation device is reasonable suspicion or probable cause, because Deputy Krick's observations met the higher standard of probable cause to believe that Hussong's boat lacked an immediately available Type IV personal flotation device, he had a sufficient basis to ask Hussong to present the device.

During Deputy Krick's brief inquiry about required safety devices, he developed a reasonable, articulable suspicion that Hussong was also boating while intoxicated. After observing Hussong's operation of the boat, observing Hussong's post-stop conduct, smelling alcohol, hearing Hussong's admission to drinking, and conducting field sobriety tests that Hussong failed, the deputy had probable cause to arrest Hussong for boating while intoxicated. The district court erred by suppressing the evidence obtained after Krick initiated the safety check.

The state urges this court to go further and to reverse the district court on a broader ground, holding that suspicionless safety checks are constitutional. We decline to do so. *See State v. Green*, 538 N.W.2d 698, 701–02 (Minn.App.1995) ("Courts generally do not decide constitutional questions unless necessary, and will instead adopt an available alternative ground of decision.") We also note that in addressing the issue in their appellate briefs, neither party considered the impact of a statute that gives a sheriff or conser-

vation officer the authority to "stop, inspect, and detain for a reasonable time a watercraft *observed in violation* of Minnesota Statutes or rules." Minn.Stat. § 86B.801, subd. 1(a) (2006) (emphasis added). One interpretation of this statute is that an officer may inspect broadly for new violations after a valid stop for a different violation, and another is that an officer may inspect related only to the observed violation. Suspicionless safety checks therefore may be permitted by the constitution and yet prohibited by statute, or the statute may permit inspections of otherwise lawfully stopped watercraft. We express no opinion on the resolution of these questions.

## DECISION

After lawfully stopping Hussong's boat, Deputy Krick developed probable cause that Hussong was not carrying required safety equipment. This supported Deputy Krick's request that Hussong present a Type IV personal flotation device whether the request must be preceded by reasonable suspicion or probable cause. As Hussong looked for the device, the officer developed a reasonable, articulable suspicion that Hussong was intoxicated. After conducting field sobriety tests, the deputy had probable cause to arrest Hussong for boating while intoxicated. The stop, the request to see the device, and the consequent investigative activity were not conducted in violation of Hussong's constitutional rights. The district court erred by suppressing evidence that the deputy obtained after he initiated the safety check.

**Reversed.**