*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1222**

Peter Alan Krech, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 10, 2015
Affirmed
Larkin, Judge**

Washington County District Court
File No. 82-CV-13-4617

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Kristi A. Nielsen, Anne C. Fuchs, Assistant Attorneys
General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Larkin,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges the civil revocation of his driving privileges under
Minnesota's implied-consent law. We affirm.

# FACTS

In August 2013, Officer Jerome Brodin responded to a report that a vehicle was in a ditch and that the driver was possibly impaired. Officer Brodin arrived at the scene around 4:14 a.m. and observed a vehicle approximately 20 to 25 feet away from the roadway in a wooded area. The vehicle was up an embankment and resting on a guy wire, and the vehicle's airbags had been activated. The driver of the vehicle, appellant Peter Alan Krech, was outside of the vehicle, wearing only one shoe, and his left knee was injured. His other shoe was on the floor of the vehicle in front of the driver's seat, near the pedals. Krech identified himself as "Pete Anderson," but his driver's license displayed his true name. Officer Brodin observed that Krech smelled of alcohol and had glossy and bloodshot eyes. Krech admitted that he had been drinking. Krech submitted to a preliminary breath test (PBT), which indicated that his alcohol concentration was .15.

Officer Brodin arrested Krech for driving while impaired, transported him to the Washington County Sheriff's Office, and read him Minnesota's implied-consent advisory. Krech stated he understood the advisory and indicated that he wished to speak to an attorney. Krech was allowed to use a telephone, made four phone calls over the course of 30 minutes, and appeared to talk to someone during three of the calls. Afterward, Krech agreed to take a breath test. Because Krech's breath test indicated an alcohol concentration of .13, respondent Commissioner of Public Safety revoked Krech's license to drive.

Krech petitioned the district court to reinstate his driving privileges. After a hearing on the petition, the district court issued a written order sustaining the revocation of Krech's license to drive.

Krech filed a notice of appeal. After the parties submitted briefs, this court stayed the appeal pending a decision in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015). This court dissolved the stay and invited supplemental briefing after the Minnesota Supreme Court released its opinion in *Bernard*. The state filed its supplemental memorandum in May 2015, arguing that under *Bernard*, Krech's breath test was valid under the search-incident-to-arrest exception to the warrant requirement. Krech did not submit a supplemental memorandum.

**D E C I S I O N**

**I.**

Krech contends that the result of his PBT is inadmissible as evidence against him because the test result was obtained in violation of the Fourth Amendment. He argues that without the PBT result, the commissioner failed to prove Officer Brodin "had probable cause to support an arrest or the invocation of the implied consent law." The district court rejected Krech's argument that the PBT result was obtained in violation of his Fourth Amendment rights. Moreover, the district court ruled that there was probable cause to arrest Krech for driving while impaired even without the PBT result.

We do not consider the substantive merits of Krech's Fourth Amendment argument because the district court's probable-cause determination was not based on the result of his PBT. Because the district court did not rely on the PBT result when

determining that there was probable cause to arrest Krech, the district court's failure to exclude evidence of the PBT result was not prejudicial and does not provide a basis to reverse. *See Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (stating that an appellant must show both error and prejudice resulting from the error to prevail on appeal); *Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn. App. 1993) (stating that the appellant bears the burden of demonstrating that error is prejudicial), *review denied* (Minn. June 28, 1993).

Moreover, the district court's probable-cause determination was sound. Probable cause exists when "officers in the particular circumstances, conditioned by their own observations and information and guided by the whole of their police experience, reasonably could have believed that a crime had been committed by the person to be arrested." *State v. Olson*, 436 N.W.2d 92, 94 (Minn. 1989). "The probable-cause standard is an objective one that considers the totality of the circumstances." *State v. Olson*, 634 N.W.2d 224, 228 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001). Appellate courts "review the district court's findings of historical fact relating to the probable cause determination for clear error under the clearly erroneous standard but . . . review de novo the issue of probable cause." *State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998).

The district court reasoned that the following circumstances established probable cause to arrest Krech for driving while impaired: the police encounter occurred at approximately 4 a.m.; Krech's vehicle was 20 to 25 feet away from the roadway in a wooded area on a guy wire; Officer Brodin observed that Krech smelled of alcohol and

4

had bloodshot and watery eyes; Krech admitted that he had driven the vehicle and had been drinking alcohol; Krech gave "somewhat evasive" answers; and Krech was wearing one shoe instead of two.

"An admission of drinking, coupled with other indicators of intoxication, is sufficient for probable cause to arrest." *State v. Laducer*, 676 N.W.2d 693, 698 (Minn. App. 2004). Minnesota courts have stated that probable cause to believe a person drove while impaired exists when a single-car accident occurs, an officer smells alcoholic beverage on the driver's breath and observes the driver's bloodshot and watery eyes, and the driver admits that he had been drinking. *See Eggersgluss v. Comm'r of Pub. Safety*, 393 N.W.2d 183, 184-85 (Minn. 1986) (concluding that an officer had probable cause to believe the defendant had been driving while impaired at the time of a one-car accident at 4:30 a.m. where a passenger admitted the driver had been drinking, the driver's breath smelled of alcohol, and the driver's eyes were watery); *Holtz v. Comm'r of Pub. Safety*, 340 N.W.2d 363, 365 (Minn. App. 1983) (noting "bloodshot and watery eyes" and "odor of alcohol on the breath" in support of probable-cause determination). In sum, the district court's probable-cause determination was not based on the PBT result, and it was not erroneous.

**II.**

Krech contends that his breath test at the sheriff's office violated his Fourth Amendment rights because it was a warrantless search and no exception to the warrant requirement applied. We review this issue de novo. *State v. Zornesi*, 831 N.W.2d 609, 621 (Minn. 2013).

The United States and Minnesota Constitutions prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. The collection of a breath sample is a search under the Fourth Amendment. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709 (Minn. App. 2008). Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). One such exception is consent.

"For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "Whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* (quotation omitted). Relevant circumstances include "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quotation omitted). Courts also consider how the police came to suspect the driver was driving while impaired, whether they read the driver the implied-consent advisory, and whether the driver had the opportunity to speak with an attorney. *Id.* "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. "[T]he 'clearly erroneous' standard controls [appellate] review of a district court's finding of voluntary consent." *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

The district court found that Krech's "consent to provide the alcohol concentration test, as requested by the officer, was voluntary and not the product of improper duress or coercion." The district court noted that the "only evidence" that Krech was coerced is "the statutory scheme itself." That finding is consistent with the Minnesota Supreme Court's analysis in *Brooks*.

In *Brooks*, the supreme court concluded that a driver voluntarily consented to three searches because he did not dispute that the police had probable cause to believe that he had been driving under the influence; he did not "contend that police did not follow the proper procedures established under the implied consent law"; the police read "the implied consent advisory before asking him whether he would take all three tests, which makes clear that drivers have a choice of whether to submit to testing"; the "police gave Brooks access to telephones to contact his attorney and he spoke to a lawyer"; and "[a]fter consulting with his attorney, Brooks agreed to take the tests in all three instances." *Brooks*, 838 N.W.2d at 569-70. The supreme court further noted that, although Brooks was in custody, he "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id.* at 571.

Similar circumstances are present here. There was probable cause to arrest Krech for driving while impaired. Krech was read the implied-consent advisory. Krech was given an opportunity to consult with an attorney. During the ensuing 30-minute attorney-consultation period, Krech made four calls and appeared to speak with someone during three of the calls. After the calls, Krech agreed to submit to a breath test. Lastly, Krech

7

was not subjected to prolonged questioning. Given those facts, the district court did not clearly err by finding that Krech's consent was voluntary.

Moreover, the supreme court recently held that a warrantless breath test may be constitutionally valid under the search-incident-to-arrest exception to the warrant requirement. *State v. Bernard*, 859 N.W.2d at 767. Under the search-incident-to-arrest exception, "the police are authorized to conduct a full search of the person who has been lawfully arrested." *Id.* (quotation omitted). The exception "derives from concerns over officer safety and a desire to preserve evidence." *Id.* at 768.

Krech contends that "any justification for the search-incident-to-arrest exception is absent and the rule does not apply," arguing that "[t]here is nothing an individual can do to destroy the evidence of alcohol concentration in the body." The Minnesota Supreme Court rejected a similar argument in *Bernard*, stating that the fact that a search of a person incident to arrest was not related to officer safety or to concerns regarding the destruction of evidence "does not compel the conclusion that the search-incident-to-arrest exception does not apply." *Id.* The supreme court explained:

> There is no question that the [United States Supreme] Court has required either a concern for officer safety or a concern over the preservation of evidence to support the constitutionality of a warrantless search of the area where the defendant was arrested or a search of items near the defendant. But the Court has not applied these concerns as a limitation on the warrantless search of the body of a person validly arrested.

*Id.* at 769. The supreme court noted that the United States Supreme Court has "characterized a warrantless search of a person as categorically reasonable under the

Fourth Amendment as a search incident to that person's valid arrest." *Id.* (citing *Missouri v. McNeely*, ___ U.S. ___, ___ n.3, 133 S. Ct. 1552, 1559 n.3 (2013)). The Minnesota Supreme Court also noted that as recently as 2014, the United States Supreme Court reaffirmed "that searches of a person incident to arrest . . . are reasonable regardless of the probability in a particular arrest situation that weapons or evidence would in fact be found." *Id.* at 770 (quoting *Riley v. California*, ___ U.S. ___, ___, 134 S. Ct. 2473, 2485 (2014)) (other quotation omitted).

In sum, the "categorical rule" recognized by the United States Supreme Court and our supreme court "allows a search of the person of [the] arrestee justified only by the custodial arrest itself." *Id.* Thus, Krech's post-arrest breath test need not be further justified by the rationale for the search-incident-to-arrest exception. Because Krech was lawfully arrested, the breath test was a reasonable search incident to arrest.

We conclude that Krech's warrantless breath test was constitutional under the consent and search-incident-to-arrest exceptions to the warrant requirement. We therefore do not consider Krech's arguments regarding the exigent-circumstances exception to the warrant requirement or the good-faith exception to the exclusionary rule.

**III.**

Krech argues that the government violated his right to due process because the implied-consent advisory threatened him with unauthorized criminal prosecution for test refusal. *See McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 855 (Minn. 1991) (holding that it was a due-process violation to threaten a driver with the crime of test refusal when the state was not authorized to impose such charges); Minn. Stat.

§ 169A.20, subd. 2 (2012) ("It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license).").  Krech contends that the state was not authorized to charge him with test refusal because the test-refusal statute is unconstitutional on substantive due-process grounds and because it violates the unconstitutional-conditions doctrine.

As to substantive due process, Krech argues that the right to refuse a constitutionally unreasonable search is a fundamental right, that the test-refusal statute is therefore subject to strict scrutiny, and that the test-refusal statute cannot survive strict scrutiny.  Krech's argument is unavailing in light of the Minnesota Supreme Court's recent decision in *Bernard*.

In *Bernard*, the supreme court held that a warrantless breath test of the driver would have been constitutional under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement.  *Bernard*, 859 N.W.2d at 772.  Because there is no fundamental right to refuse a constitutional search, the supreme court reviewed the driver's as-applied substantive due-process challenge to Minnesota's criminal test-refusal statute under the rational-basis standard.  *Id.* at 773.  The supreme court reasoned that "it is rational to conclude that criminalizing the refusal to submit to a breath test relates to the state's ability to prosecute drunk drivers and keep Minnesota roads safe" and concluded that "the test refusal statute is a reasonable means to a permissive object and that it passes rational basis review." *Id.* at 774.

10

In this case, the warrantless breath test was constitutional under the consent and search-incident-to-arrest exceptions to the warrant requirement. Krech does not have a fundamental right to refuse a constitutional search. *See id.* at 773 (stating that a driver "does not have a fundamental right to refuse a constitutional search"). Because a fundamental right is not at stake, Krech's substantive due-process challenge fails under *Bernard*.

Krech also argues that the test-refusal statute violates the unconstitutional-conditions doctrine "because it compels the surrender of the constitutional right to withhold consent to a warrantless search as a condition of driving." This court recently held that "Minnesota's test-refusal statute does not violate the unconstitutional-conditions doctrine by imposing a criminal penalty on a person who has been arrested for driving while impaired and has refused to submit to a breath test." *State v. Bennett*, ___ N.W.2d ___, ___, No. A14-1813, slip op. at 1 (Minn. App. July 27, 2015). Krech's unconstitutional-conditions challenge fails under *Bennett*.

In sum, Krech's argument that the government violated his right to due process by threatening him with unauthorized criminal prosecution for test refusal fails because application of the criminal test-refusal statute in this case would not have violated Krech's right to substantive due process and because the test-refusal statute does not violate the unconstitutional-conditions doctrine.

**Affirmed.**